UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANTHONY KNOX,

       Plaintiff,

  v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

Case No. 1:14-cv-131

Bowman, M.J.

**MEMORANDUM OF OPINION AND DECISION**

Plaintiff Anthony Knox filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes. The parties have consented to the jurisdiction of the Magistrate Judge for disposition of this matter. (Doc. 14). For the reasons explained below, the finding of non-disability is supported by substantial evidence in the administrative record, and is herein AFFIRMED.

    **I. Summary of Administrative Record**

In June 2010, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) alleging a disability onset date of June 11, 2010, due to physical and mental impairments. After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Plaintiff appeared and testified at an initial hearing on April 26, 2012, and was granted a continuance to obtain counsel. On July 2, 2012, ALJ

1

Gilbert Sheard held an evidentiary hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff, a medical expert and an impartial vocational expert. (Tr. 37-75). On September 24, 2012, ALJ Sheard denied Plaintiff's application in a written decision. (Tr. 11-26). Plaintiff now seeks judicial review of the denial of his applications for benefits.

Plaintiff was 47 years old on his alleged onset date and dropped out of school in the eleventh grade. He has past relevant work as an assembly line worker, janitor and hand packer. Plaintiff alleges disability based on depression, anxiety, and right knee and back problems.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "anxiety impairment and a major joint dysfunction of the knees, right greater than left." (Tr. 13). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform a full range of light work with the following limitations:

> He cannot understand, remember, and carry out complex instructions. Due to difficulties maintaining attention and concentration and pace for extended periods, the job must be routine and repetitive, and be far enough from others to reduce distractions, and not require intense focused attention until the next scheduled break and have no assembly line type work which forces inflexible pace. Due to difficulties with co-workers, he cannot work as part of a close-knit work team, but must be doing his own work in his own workstation; there will be other people around but he must just be doing his own thing. He cannot work directly with the general public. Due to difficulties with supervisors, he cannot have a job, which is normally closely and intensely supervised after he first learns the job. Due to difficulties responding appropriately to changes in the work setting, give him a job, which does not change frequently. The

2

> job itself must be inherently not highly stressful. Do not give him complex or abstract work. He can seldom climb, balance, stoop, crouch kneel, crawl or squat.

(Tr. 19-20). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, limited education and work experience, and the RFC, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy. (Tr. 24-25). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB and/or SSI. (Tr. 24-25).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff first argues that the ALJ erred by: (1) failing to properly develop the record relating to Plaintiff's intellectual deficits; and (2) improperly weighing the opinion evidence. Upon close analysis, I conclude that Plaintiff's assignments of error are not well-taken.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

3

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that

4

claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is Substantially Supported**

*1. Evaluation of the Opinion Evidence*

Plaintiff argues first that the ALJ erred by failing to assign appropriate weight to the opinions of the consultative examiner, as well as Plaintiff's treating sources. Specifically, Plaintiff contends that the ALJ erred in his assessment of the December 2010 opinion provided by consultative examiner Susan Kenford, Ph.D. (Doc. 13. 9-15, Tr. 389-95). With respect to his treating sources, Plaintiff further contends that the ALJ erred by not adopting the opinions of Angela Belser, an intern therapist, and Mary Frie, an advanced practical nurse. Plaintiff's contentions will be addressed in turn.

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner of Social*

5

*Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson* v. *Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

In weighing differing medical opinion evidence, an ALJ considers the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart,* 192 Fed. Appx. 456, 461 (6th Cir.2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

More weight is generally given to an opinion offered by a medical source who has examined the claimant over an opinion offered by a medical source who has not examined the claimant. 20 C.F.R. § 404.1527(d)(1). More weight is given to opinions supported by "relevant evidence" such as "medical signs and laboratory findings[.]" 20 C.F.R. § 404.1527(d)(3). Further, more weight is given to those medical opinions that are "more consistent ... with the record as a whole[.]" 20 C.F.R. § 404.1527(d)(3).

After assessing the weight accorded medical source evidence, ultimately, an ALJ can properly rely on the conclusions of a nonexamining, record reviewing physician to support an RFC assessment. *See Sullivan v. Comm'r of Soc. Sec.,* No. 1:07cv331, 2009 WL 648597, *13 (S.D.Ohio Mar.11, 2009). Such is permissible "because the Commissioner may view nonexamining sources 'as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Id.* (citing Social Security Ruling 96–6p). Opinions offered by nonexamining physicians "are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Id.* (citing 20 C.F.R. § 404.1572(d), (f)). Thus, "under some circumstances, [opinions from nonexamining doctors can] be given significant weight." *Linton v. Astrue,* No. 3:07cv00469, 2009 WL 540679, *8 (S.D. Ohio Mar 2, 2009).

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d)(2); *but see Tilley v. Comm'r of Soc. Sec.*, No. 09–6081, 2010 WL 3521928, at *6 (6th Cir. Aug.31, 2010) (indicating that, under *Blakely* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

*A. Dr. Kenford*

Dr. Kenford examined Plaintiff on December 15, 2010 at the request of the state agency. Dr. Kenford diagnosed anxiety disorder, borderline intellectual functional by clinical estimate. (Tr. 394). She determined that Plaintiff was moderately impaired in

7

his ability to perform simple repetitive one or two part tasks; markedly impaired in his ability to handle the stresses and pressures of a general work environment; moderately impaired in his ability to get along with others, including co-workers, and supervisors; and moderately impaired in his ability to maintain attention, concentration, and persistence. (Tr. 21, 394-95).

The ALJ afforded "some" weight to Dr. Kenford's findings noting that the moderate limitations found by Dr. Kenford were consistent with the other evidence in the record; however, other treating records were not consistent with Dr. Kenford's finding that Plaintiff was markedly impaired in handling the stress and pressures of a general work environment. (Tr. 22).

In this regard, the ALJ noted that Plaintiff's anxiety primarily came from living in a dangerous neighborhood where he often heard gunshots, but Plaintiff reported doing much better since moving to a different neighborhood and by taking Depakote. (Tr. 21, 477-92). Specifically, therapy notes from May 10, 2012, showed that Plaintiff was looking for a landlord who would take Section 8 housing. (Tr. 22, 481). Plaintiff also reported that he was not having anxiety or depression. (Tr. 22, 481). Plaintiff reported that he had been sleeping more since taking Depakote, and that he felt his medication had been helping the sleep apnea symptoms because he did not feel out of breathe any more when he woke up. (Tr. 22, 481). Plaintiff also reported that he continued to stay busy by going to the library, exercising, and dating. (Tr. 22, 481). In June 2012, Plaintiff reported that he continued to feel threatened in the neighborhood he was living in as he reported hearing gunshots and would not be able to move into his new apartment for two weeks. (Tr. 22, 479). In July 2012, Plaintiff reported that he had been spending time

8

with a new girlfriend and that he had been looking in the paper for new things to do in the city. (Tr. 22, 477). He had been going to parks and aquariums and would like to travel to other cities. (Tr. 22, 477).

The ALJ further explained that Dr. Kenford's examination represented a snapshot of one point in time, and at the time of the assessment, Plaintiff admitted he was not taking any psychotropic medication. (Tr. 22). *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6) (other factors considered in evaluating opinions). The ALJ reasonably considered this factor given the evidence showing Plaintiff's improvement since taking medication.

The ALJ's evaluation of Dr. Kenford's findings is further supported by the testimony of Mary Buban, Psy.D, the medical expert who testified at the administrative hearing. Notably, upon review of the record through 2010, Dr. Buban found that Plaintiff has mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration persistence and pace. (Tr. 410). Dr. Buban also reported that there was an estimate of borderline intellectual functioning but that condition was not well established in the record as no IQ testing was performed.

The ALJ's mental RFC finding is further supported by the December 27, 2010 opinion of state agency reviewing psychologist Bruce Goldsmith, Ph.D., who found that Plaintiff was limited to simple task instructions without strict time or production demands, and limited to occasional and superficial interpersonal contact, and limited to an environment with infrequent changes. (Tr. 93-95). On April 27, 2011, state agency reviewing psychologist Aracelis Rivera, Psy.D., examined Plaintiff's file and affirmed Dr.

9

Goldsmith's assessment of Plaintiff's functional limitations associated with her mental impairments. (Tr. 109-10). In light of the foregoing, the ALJ's decision to afford little weight to Dr. Kenford's assessment is substantially supported.

*B. Plaintiff's Treating Sources*

Plaintiff further argues that the ALJ erred by failing to adopt the opinions of Angela Belser, an intern therapist, and Mary Frie, an advanced practical nurse. In November 2012, Ms. Belser indicated that Plaintiff would have noticeable mental difficulties up to 20 percent of the work day. (Tr. 22, 509). Ms. Frie co-signed the assessment. (Tr. 22, 509). The ALJ discounted these opinions, finding that Ms. Belser's and Ms. Frie's opinions were extreme and inconsistent with their treatment records. (Tr. 22). The ALJ's findings are substantially supported in this regard.

As noted by the ALJ, treatment notes from Ms. Belser in May 2012, indicated that Plaintiff "has not been having anxiety or depression." Ms. Belser further notes that Plaintiff reported that "he continues to stay busy by going to the library, exercising and dating." (Tr. 481). Plaintiff also reported sleeping more and improvement in his sleep apnea symptoms. *Id.* In June 2012, Plaintiff reported that his "anxiety and depression are under control" and he "continues to stay involved in activities." As noted above, Plaintiff further reported that he likes to spend time in parks and aquariums. (Tr. 479). In July 2012, Plaintiff reported that he had been enjoying spending time with his new girlfriend and has been looking in the paper to do new things in the city. He further noted that he would like to travel to other cities. (Tr. 477). Such treatment notes are inconsistent with Ms. Belser and Ms. Wilson's extreme functional limitations. As such, the ALJ properly afforded little weight to their findings. *See* 20 C.F.R. 404.1527(c)(4),

10

416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Furthermore, the ALJ also properly considered that Ms. Belser and Ms. Frie are not considered acceptable medical sources under the regulations, but are considered other sources. (Tr. 22). See 20 C.F.R. § 404.1513(d); *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 399 (6th Cir. 2014) (a therapist—is not properly classified as an "acceptable medical source" opinion but is an "other source" opinion); *See also* 20 C.F.R. § 404.1513 (1997);*Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (a nurse practitioner is listed under "other [non-medical] sources.").

An administrative law judge is not required to afford the same level of deference to opinions of "other sources" as he or she must afford to the opinions of "acceptable medical sources." See 20 C.F.R. § 404.1513(a) (noting that information from "other sources" cannot establish the existence of an impairment, and that there must be evidence from an "acceptable medical source" for this purpose). In any event, the ALJ must "consider all relevant evidence in the case record," which necessarily includes evidence from "other sources." Social Security Ruling (SSR) 06–03p, 2006 WL 2329939 (Aug. 9, 2006) (providing that in assessing the weight afforded to opinions from other medical sources," the Commissioner will consider the same factors utilized to assess opinions from acceptable medical sources such as the length, nature, and extent of the relationship, the consistency of the opinion with other evidence, and the degree to which the source presents relevant evidence to support an opinion).

Here, the ALJ accorded little weight to Ms. Belser and Ms. Frie's findings because they were "extreme and inconsistent with their treatment records." (Tr. 22). As

11

detailed above, in light of such inconsistencies, the undersigned finds that the ALJ reasonably questioned the findings of Ms. Belser and Ms. Frie. Accordingly, the ALJ's decision is supported by substantial evidence in this regard.

*2. Development of the Record*

Plaintiff further asserts that the ALJ erred in failing to properly develop the record relating to Plaintiff's intellectual functioning, thereby failing to find that Plaintiff's intellectual deficits were not "severe" impairments. More specifically, Plaintiff argues that "there was evidence in the record that his intellectual functioning is compromised, and the medical evidence found that the evidence was 'insufficient' to assess the precise limitations associated with this impairments, the ALJ should have ordered a consultative examination to determine the extent of Mr. Knox's intellectual deficits." (Doc. 13 at 6). Plaintiff's contentions are unavailing.

"An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter,* 279 F.3d 348, 355 (6th Cir. 2001). The regulations state: "If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical or mental examinations or tests." 20 C.F.R. §§ 404.1517, 416.917 (emphasis added).

In *Foster v. Halter*, the Sixth Circuit held that the ALJ did not abuse his discretion by denying the claimant's requests for additional testing and expert testimony related to her alleged intellectual impairment where there was already sufficient testimony on the claimant's impairments in the record for the ALJ to evaluate her mental condition. 279 F.3d 348, 355-56 (6th Cir. 2001). The Sixth Circuit affirmed that district court's finding

12

that the ALJ properly exercised his discretion to reject the claimant's requests for additional testing and expert testimony given the absence of evidence of deficits in adaptive behavior which initially manifested themselves during the developmental period. In *Hayes v. Commissioner of Social Security*, 357 F. App'x 672, 674-77 (6th Cir. 2009), the Court found that an ALJ did not abuse his discretion by denying the claimant's request to order additional testing because even with additional testing the claimant would not be able to meet Listing 12.05(C); the record indicated that the claimant would not be able to meet the diagnostic description of mental retardation, which required showing subaverage intellectual functioning, onset before the age of 22, and adaptive-skills limitations.

Similarly, in this case, the ALJ did not abuse his discretion by not ordering additional intelligence testing. There was ample evidence in the record on which the ALJ was able to assess Plaintiff's alleged mental impairment. The ALJ found that Plaintiff did not have deficits in adaptive functioning; noting that Plaintiff makes his own decisions, manages his finances and his household, and engages in significant activities of daily living. (Tr. 16). The ALJ pointed out that Plaintiff finds his own apartments and reported that he stayed busy by going to the library, the mall, visiting family, exercising, and dating. (Tr. 16, 481, 490). He reported to his therapist in January 2012 that he had been taking care of his mother since she had a stroke two months prior. (Tr. 16, 491). Moreover, the ALJ noted that state agency reviewing physicians had found that Plaintiff had limitations due to both anxiety and borderline intellectual functioning. (Tr. 16, 90, 105, 118). The ALJ reasonably relied on Dr. Buban's opinion

13

that the evidence did not support a finding that Plaintiff had borderline intellectual functioning. (Tr. 16, 51-52).

In light of the foregoing, the undersigned finds that the Plaintiff's assignment of error is not well-taken in this regard.

### III. Conclusion

For the reasons explained herein, **IT IS ORDERED THAT** Defendant's decision is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and this case is **CLOSED.**

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge